UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois Corporation, | ) ) ) ) | CIVIL ACTION |
| Plaintiff, | ) ) ) | NO. 17-40172-TSH |
| v. | ) ) ) |  |
| BARBARA PIKE, and JANE DOE, by and through her next friend, KIM PIKE, | ) ) ) ) |  |
| Defendants. | ) ) |  |

**ORDER AND MEMORANDUM ON PLAINTIFF'S MOETION FOR SUMMARY JUDGMENT (Docket No. 31)**

**June 25, 2019**

**HILLMAN, D.J.**

John Pike ("Pike") sexually abused his granddaughter, Jane Doe. Subsequently, Jane Doe brought a claim against her grandmother and Pike's wife, Barbara Pike ("Barbara") for negligently allowing Pike to abuse her. Barbara sought defense and indemnity from her insurer, State Farm Fire and Casualty Company ("State Farm").

State Farm now seeks declaratory judgment that the policies do not provide coverage for abuse that occurred while the policies were not in effect and regardless of the number of incidents of abuse that occurred while the policies were in effect, only one "occurrence" or "loss" occurred under the meaning of the policies. Further, State Farm moves for summary judgment on Jane Doe's counterclaim that State Farm breached its duty to make a settlement offer where liability is reasonably clear.

For the reasons stated below, State Farm's motion (Docket No. 31) is ***denied***.

**Background**

*1. Abuse*

This Court's review of the record is in the light most favorable to the party opposing summary judgment. *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 50 (1st Cir. 2000).

Jane Doe is a minor female resident of Massachusetts who was sexually abused by her grandfather, Pike. Jane Doe previously sued Pike and judgment was entered against him in the amount of $5,000,000. *See Doe v. Pike*, 15-CV-40057-TSH. Barbara, Pike's wife and Jane Doe's maternal grandmother, occasionally cared for Jane Doe while her mother, Kim Pike ("Kim"), was at work. Although Kim requested that Barbara supervise Doe, Pike would accompany Barbara to Jane Doe's home.

Pike sexually abused Jane Doe at her home. Jane Doe further alleges that abuse occurred at her homes in Upton and Centerville, Massachusetts, and Pike and Barbara's condo in Laconia, New Hampshire. Pike made Jane Doe do headstands and, while Jane Doe was upside down, put his mouth on her vulva. Pike admits that he performed oral sex on Doe up to six times. On one occasion in 2010, Pike kissed Doe and inserted his tongue into her mouth. Pike also made Jane Doe play the "penny game" where Pike would hide a penny in the foreskin of his penis and make Jane Doe find it. Jane Doe suffered significant and enduring emotional distress as a result of the abuse. She lost her motivation to attend school and her desire to socialize. The emotional distress also had physical manifestations and symptoms such as stomach pain, headaches, and nightmares.

Much of the abuse occurred while Barbara was supposed to be supervising Jane Doe but was instead napping, reading outside, or otherwise occupied. According to Jane Doe, Barbara was also present during some of the abuse. For instance, Doe described one incident when she was

being molested by Pike under a blanket and Barbara walked in and made eye contact with her. Barbara, however, alleges that she first learned about the abuse when her son Scott called her in 2014. Barbara also observed Pike playing the "turn on the radio" game with his grandchildren, where Pike would twist their nipples. Jane Doe alleges Barbara watched Pike play this game with her. Barbara testified, however, that she did not specifically recall Pike playing the game with Jane Doe and that she thought the game was simply innocent horseplay. Barbara was also aware of the 1998 allegations against Pike of sexual abuse of another grandchild.

After the abuse began, Jane Doe attempted to avoid Barbara and Pike when they were at her home. She locked herself in her room and put duck-tape on the door. Jane Doe befriended neighbors so she could leave the home while Barbara and Pike were there. According to Jane Doe, Barbara became angry that Jane Doe avoided her and Pike and pressured Jane Doe to spend more time with them. Barbara never told Kim that she had left Jane Doe alone with Pike or informed Kim about the risk that Pike posed.

## 2. *State Farm Policies*

State Farm issued three insurance policies that are the subject of this litigation: A Condominium Unitowners Policy with an effective date of October 1, 2009, a Homeowners Policy with an effective date of September 23, 2009, and a Personal Liability Umbrella Policy with an effective date of October 1, 2009. *See* Docket No. 32-10, at 3-102.

On January 4, 2017, Jane Doe, as a third-party beneficiary under the Policies, sent a demand to State Farm pursuant to Mass. Gen. Laws ch. 93A and ch. 176D, demanding that State Farm make a fair and reasonable settlement offer. On February 28, 2017, State Farm refused to grant relief following receipt of Jane Doe's demand letter because Barbara's liability was not "reasonably clear." *See* Docket No. 32-10, at 109.

**Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A factual dispute precludes summary judgment if it is both "genuine" and "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id.*

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the nonmoving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006) (quoting *Celotex*, 477 U.S. at 325). Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325). When ruling on a motion for summary judgment, the court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir. 1995).

**Discussion**

1. *Choice of Law*

When a district court's jurisdiction is based upon diversity of citizenship, the court must apply the choice-of-law rules of the forum state. *Klaxon v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941).  However, "[t]he first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions." *Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir. 2004).  The First Circuit has explained that when "the outcome is the same under the substantive law of either jurisdiction," there is no actual conflict and the court "need not resolve the [choice-of-law] issue." *Lambert v. Kysar*, 983 F.2d 1110, 1114 (1st Cir. 1993).  The parties agree that New Hampshire and Arizona laws govern this dispute. Accordingly, I need not resolve this issue. *See Artuso v. Vertex Pharma., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011) ("In determining which state's law applies, a diversity court is free to honor the parties' reasonable agreement.").

If the Court cannot discern any controlling New Hampshire or Arizona authority on a certain point, it must make an informed guess as to how the state's highest court would resolve the issue. *Sanders v. Phoenix Ins. Co.*, 843 F.3d 37, 42 (1st Cir. 2016).  That "prediction may be guided, inter alia, by persuasive case law from other jurisdictions and relevant public policy considerations." *Id.* (quotation marks omitted).

### 2. *Declaratory Judgment*

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).  It permits federal courts to award declaratory relief when an actual case or controversy is present. *See Verizon New England, Inc. v. Int'l Broth. of Elect. Workers, Local No. 2322*, 651 F.3d 176, 187 (1st Cir. 2011) ("Requests for a declaratory judgment may not be granted

unless they arise in a context of a controversy 'ripe' for judicial resolution."); *Abbot Labs. V. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

A duty to indemnify "arises only after the insured's liability has been established and is between the insurer and the insured," *Wilkinson v. Citation Ins. Co.*, 447 Mass. 663, 671 (2006), and must be "determined by the facts, which are usually established at trial." *Travelers Ins. Co. v. Waltham Indus. Labs. Corp.*, 883 F.2d 1092, 1100 (1st Cir. 1989). *Accord Great Am. Dining, Inc. v. Philadelphia Indem. Ins. Co.*, 164 N.H. 612, 626-28, 62 A.3d 843 (2013); *Lennar Corp. v. Auto-Owners Ins. Co.*, 214 Ariz. 255, 260-61, 151 P.3d 538 (Ct. App. 2007); *INA Ins. Co. of North America v. Valley Forge Ins. Co.*, 150 Ariz. 248, 255, 722 P.2d 975 (App. 1986).

Accordingly, "a declaratory judgment is not yet ripe for consideration regarding the duty to indemnify where, as here, the underlying action has not determined liability or adjudicated factual disputes." *Narragansett Bay Ins. Co. v. Kaplan*, 146 F. Supp. 3d 364, 372 (D. Mass. 2015); *see also Johansen v. Liberty Mutual Grp., Inc.*, 2016 WL 7173753, at *10 (D. Mass. Dec. 8, 2016) (noting that "a declaratory judgment action regarding an insurer's duty to indemnify is premature if the underlying claim for liability has not been resolved"); *Lee Kennedy Co., Inc. v. Arch Ins. Co.*, 357 F. Supp. 3d 81, 86 (D. Mass. 2019) ("[A] contractual obligation to defend or indemnify must be preceded by a formal adjudication to determine liability and/or damages.").

Because Barbara's underlying liability has not been established, it is premature to rule on the indemnity issue. Further, while State Farm argues that the instances of abuse are one "occurrence" or "loss" as those term is defined in the policies, that analysis is fact intensive and I elect to wait until after trial to decide that issue. Therefore, the portion of State Farm's motion seeking declaratory judgment that there is no coverage for events that occurred before the effective

dates and that there was only one "occurrence" under the policies is denied. State Farm may renew its request after the trial.[1]

### 3. Settlement Offer (Counterclaim Count II)

Jane Doe claims that State Farm refused to make a fair and reasonable settlement offer in violation of Mass. Gen. Laws ch. 93A and ch. 176D.

An insurer's duty to settle does not arise until "liability has become reasonably clear." Mass. Gen. Laws ch. 176D, §3(9)(f). Typically, the determination of whether an insurer has met this duty is reserved for a finder of fact. *Bobick v. U.S. Fid. & Guar. Ins. Co.*, 57 Mass.App.Ct. 1, 3-4 (2003) ("Whether an insurer has conducted an adequate investigation before denying a claim, whether liability has become reasonably clear, and whether a settlement offer is reasonable are factual determinations."). "However, certain actions may fall outside of the scope of a fact finder's determination." *Scott v. Vermont Mut. Ins. Co.*, 2011 WL 4436984, at *6 (D. Mass. Sep. 22, 2011). "Although whether a particular set of facts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a Chapter 93A violation is a question of law." *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 54 (1st Cir. 1998) (quoting *Ahern v. Scholz*, 85 F.3d 774, 797 (1st Cir. 1996)) (brackets omitted).

"Massachusetts courts have emphasized that this provision does not 'penalize insurers who delay in good faith when liability is not clear and requires further investigation." *Scott*, 2011 WL 4436984, at *8 (citing *Clegg v. Butler*, 424 Mass. 413, 676 N.E.2d 1134, 1140 (1997)). Therefore, "[l]iability under c. 176D and 93A does not attach merely because an insurer concludes that it has no liability under an insurance policy and that conclusion is ultimately determined to have been

---

[1] In *Doe v. Pike*, 17-cv-40021-TSH, the Defendant, Barbara Pike, has filed a motion for summary judgement which was heard by this Court at the same hearing that this motion was heard. That motion is under advisement.

erroneous." *Pediatricians, Inc. v. Provident Life & Accident Ins. Co.*, 965 F.2d 1164, 1173 (1st Cir. 1992); *see also Guity v. Commerce Ins. Co.*, 36 Mass.App.Ct. 339, 344 (1994) ("A plausible, reasoned legal position that may ultimately turn out to be mistaken—or simply, as here, unsuccessful—is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D.").

Whether liability is reasonably clear depends on "whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff." *Nyer v. Winterhur Int'l*, 290 F.3d 456, 461 (1st Cir. 2002) (quoting *Demeo v. State Farm Mut. Auto. Ins. Co.*, 38 Mass.App.Ct. 955, 956-57 (1995)); *see also Demeo*, 38 Mass.App.Ct. at 956 ("Whether the defendant's liability in this case became 'reasonably clear' calls for an objective standard of inquiry into the facts and the applicable law."). "Relevant evidence may include insurance industry practices in similar circumstances, expert testimony that the insurer violated sound claims practices, the defendant's own evaluation of the plaintiff's claim, and advice given to the insurance company on the probability of success at trial." *O'Leary-Alison v. Metropolitan Prop. & Cas. Ins. Co.*, 52 Mass.App.Ct. 214, 217 n.3 (2001).

On February 27, 2017, State Farm responded to Jane Doe's demand letter and informed her that its "liability investigation has concluded that the insured, Barbara Pike, was not aware of the sexual abuse and should not have been aware of the sexual abuse." (Docket No. 32-10, at 109). State Farm "reviewed the police reports . . . and [took] into consideration the facts that you [Jane Doe] allege[d] in [her] correspondence." *Id.* Accordingly, State Farm concluded that "[t]he liability of Barbara Pike is not reasonably clear." *Id.*

Interpreting the facts in the light most favorable to the non-moving party as I must, however, a factfinder might conclude that Barbara's negligence should have been reasonably clear

to State Farm.  For instance, Barbara was aware of past allegations of sexual abuse and witnessed Pike touching the nipples of their grandchildren. (Docket No. 40 ¶¶ 115, 122).  Nonetheless, she repeatedly left Jane Doe alone with Pike.  These facts, coupled with a relative dearth of information regarding State Farm's investigative procedures, caution against resolution of the claim at this stage.[2]

## Conclusion

For the reasons stated above, State Farm's motion is *__denied__*.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

[2] There are also more implicative allegations against Barbara that are disputed.  For instance, that she made eye contact with Jane Doe while Pike was inappropriately touching her.  Jane Doe's contention that "multiple disputes of fact . . . regarding liability" in fact supports a finding that liability was *not* clear to State Farm. (Docket No. 39, at 15).  As noted above, however, there are enough agreed upon facts and insufficient information about State Farm's own investigative procedures which render resolution of the claim on summary judgment is improper.  Further, the duty to make a reasonable offer of settlement when liability becomes clear is ongoing as facts are developed. *See, e.g.*, *R.W. Granger & Sons, Inc. v. J & S Insulation, Inc.*, 435 Mass. 66, 75 (2001) (finding post-verdict violation of Chapter 176D and rejecting defendant insurer's argument that liability was not reasonably clear because the amount of attorney's fees was still disputed).